**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

RONALD A. SHREEVE and
LINDA C. COSTOPULOS,

                Plaintiffs,

v.                                    Case No. 20-12046

CHRIS RAYES and
CITY OF ST. CLAIR SHORES,

                Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND
DISMISSING THIS CASE**

      Neighbor disputes can become ugly. One may resolve any doubt about that

proposition by asking Senator Rand Paul of Kentucky. *See United States v. Boucher*,

937 F.3d 702, 704 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 2668 (2020). Here, Plaintiffs

Ronald A. Shreeve and Linda C. Costopolus own residential property in St. Clair

Shores, Michigan, facing the usually tranquil and expansive blue waters of Lake St.

Clair. But when the next-door property owners sought to construct a new house,

difficulties arose and then compounded. This case questions whether city officials can

be liable for the effects of private, permitted construction.

      The proposed neighboring house, in early planning sessions, was to be sited no

closer to the lake than was Plaintiffs' house; but in later planning versions, and in the

actuality of construction, it was re-situated further east, where it noticeably obstructed

the lakeward view from Plaintiffs' property. Plaintiffs now bring equal protection and

substantive due process claims against Defendants City of St. Clair Shores and Chris

Rayes, an employee of St. Clair Shores. (ECF No. 1, PageID.10-16.) Plaintiffs claim Defendants violated their constitutional rights by permitting the neighbors to build closer to the water's edge—past Plaintiffs' existing east façade—than was properly allowed by municipal custom and practice.

Defendants have moved to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 13.) Plaintiffs filed a response and Defendants replied. (ECF Nos. 15, 18.) The court has reviewed the record and held a hearing on January 13, 2021. For the reasons provided below, the court must grant Defendants' motion.

## I.  BACKGROUND

The following are facts as alleged in Plaintiffs' complaint. In a motion to dismiss, the court accepts Plaintiffs' factual allegations as true but makes no overt finding as to truth or falsity. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs own and occupy their residence on Lake St. Clair, [1] and the owners of the lot adjoining Plaintiffs' southerly property line sought to build a new home. (ECF No. 1, PageID.3.) The planned house was to be taller than thirty feet, a height that would require a zoning variance from Plaintiffs' local municipality, Defendant St. Clair Shores. (*Id.*, PageID.4-5.)

The neighbors applied for a variance before Defendant's Zoning Board of Appeals ("ZBA"), and in connection submitted a site plan. (*Id.*, PageID.5.) In the site

---

[1]    Lake St Clair, about 400 square miles in area, is sometimes referred to as "the sixth Great Lake." Connected to Lake Huron by the St Clair River and to Lake Erie by the Detroit River, the lake/river system is actually more of a wide spot in the strait that joins the two much larger bodies of water. *See Welcome to Lake St. Clair*, Great Lakes Sailing, https://www.great-lakes-sailing.com/lake_st_clair.html (last visited Jan. 22, 2021).

plan, the majority of the proposed new house was set back 153 feet from the lake, essentially in line with the east front of Plaintiffs' home. (*Id.*) At a hearing to consider the variance application, the neighbors stated their new home would be in line with Plaintiffs' house. (*Id.*) Defendant Rayes, the Community Development Director for Defendant St. Clair Shores, stated at the hearing that the city "tr[ies] [to] keep everyone in line so neighbor[s] . . . don't block views." (*Id.*)

The neighbors' variance was granted. (*Id.*, PageID.6.) Thereafter, while seeking the remaining required building permits, the neighbors submitted a revised site plan, which placed the home twenty to forty feet closer to the water than originally planned. (*Id.*) The new location placed the neighbors' home markedly out of alignment with Plaintiffs'. (*Id.*) Defendants received the revised site plan and allowed the neighbors to continue construction without sending the matter back to the ZBA. (*Id.*, PageID.7.) Defendants approved the remaining permits, and the neighbors advanced toward completion of the house. (*Id.*, PageID.8-9.)

In July 2020, Plaintiffs filed suit against their neighbors alleging nuisance, and against Defendants alleging a violation of Plaintiffs' equal protection and substantive due process rights. (ECF No. 1, PageID.6.) On October 9, 2020, the court dismissed the claims against the neighbors without prejudice. (ECF No. 17.)

## II.  STANDARD

Under Federal Rule of Civil Procedure 12(b)(6) a party can move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are

drawn in favor of the plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "To survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The plaintiff must present "more than labels and conclusions." *Twombly*, 550 U.S. at 545. "[A] formulaic recitation of a cause of action's elements will not do." *Id.*

When reviewing a motion to dismiss, the court "may not consider matters beyond the complaint." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). However, the court may consider "documents incorporated into the complaint by reference . . . and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider "a document that is not formally incorporated by reference or attached to a complaint" when "[the] document is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

### III. DISCUSSION

Plaintiffs claim that by allowing their neighbors to build a house twenty to forty feet closer to the lakeshore, Defendants violated Plaintiffs' substantive due process and equal protection rights. Defendants argue dismissal of both claims is warranted.

The court will first address the issue of standing and then will turn to the merits of Plaintiffs' claims.

### A.  Standing

Article III Section 2 of the U.S. Constitution limits judicial power to cases and controversies. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). "Standing to sue is a doctrine rooted in the traditional understanding of a case and controversy." *Id.* "The Supreme Court has enumerated the following elements necessary to establish standing:

> First, [the] [p]laintiff must have suffered an injury in fact–an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of– the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Parsons v. U.S. Dept. of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The issue of standing "can be raised *sua sponte*." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007).

Defendants allegedly violated Plaintiffs constitutional rights by allowing Plaintiffs' neighbors to build too close to the lake. Of course, it was the neighbors, not Defendants, who financed and pursued the construction inhibiting Plaintiffs' views. (ECF No. 1, PageID.10-13.) Plaintiffs do not allege Defendants played any part in the neighbors' decision to build the house beyond approving a requested height variance. The neighbors are not state actors, and constitutional protections "are triggered only in the presence of state action." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). Even drawing all reasonable inferences in Plaintiffs' favor, *Ashcroft*, 556 U.S. at

678, Plaintiffs' neighbors were not directed or controlled by Defendants, and the construction of the residence was not a government action. Accepting the allegations in the complaint as true, *id.*, the obstruction of Plaintiffs' view was created by the deliberate choice of their neighbors to construct on their own private property.

Plaintiffs fail to cite any municipal code provision, or state or federal law, that prohibited their neighbors from constructing a house so close to the lakeshore.[2] Indeed, Defendant St. Clair Shores' zoning code required only that the neighbors' house observe a thirty-five-foot setback from the lake's edge, St. Clair Shores, Mich., Ordinances art. XVIII, § 15.481 (2019), and Plaintiffs' complaint concedes their neighbors' structure was built more than 100 feet back from the lake. (ECF No. 1, PageID.4, 6; ECF No. 1-5, PageID.30, Revised Site Plan (listing the distance between the neighbors' house and the shore).) In addition, Plaintiffs do not cite a law requiring that houses in St. Clair Shores be in line. Nor do Plaintiffs cite law mandating that their neighbors return to the ZBA after receiving a height variance to obtain approval for construction of a house closer to the water than initially proposed.

Plaintiffs must have standing to bring a claim in federal court. *See Spokeo, Inc.*, 136 S.Ct. at 1547. And it is well established law that "an injury that results from [a] third party's voluntary and independent actions or omissions" cannot serve to establish standing. *Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 457 (6th Cir. 2017) (citing *Bennett v. Spear*, 520 U.S. 154, 169 (1997)) (finding parties lacked standing against the government for the response of banks to increased regulation, reasoning "although an injury produced by . . . determinative or coercive effect upon a third party . . . may

---

[2]        For further discussion, see *infra* Sections II.B and II.C.

suffice for standing, an injury that results from the third party's voluntary and independent actions or omissions does not"); *Am. Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644, 666-70 (6th Cir. 2007) (finding the plaintiffs lacked standing where they alleged that a government program of illegal wiretaps caused overseas parties to stop talking to the plaintiffs via telephone); *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 40-46 (1976) (ruling that the plaintiffs lacked standing to sue the government for hospitals' decisions to deny medical care, allegedly due to federal tax policy).

Plaintiffs' injury "depends on the unfettered choices made by independent actors not before the court[] and whose exercise of broad and legitimate discretion the court[] cannot presume to either control or to predict." *United States v. Carroll*, 667 F.3d 742, 745 (6th Cir. 2012) (quoting *Lujan*, 504 U.S. at 562 (1992)).

The court cannot find Defendants responsible for the independent and lawful choices Plaintiffs' neighbors made in building their structure. If Plaintiffs believe themselves harmed by their neighbors' decisions in managing their property, Plaintiffs must pursue claims directly against their neighbors.[3] But Plaintiffs simply do not have standing to sue these Defendants for the actions of the neighbors.

## B. Substantive Due Process

Having found Plaintiffs lack standing to sue Defendants, Defendants' motion will be granted. Nonetheless, even if Defendants could be held responsible for the

---

[3]     Plaintiffs did so in this case, bringing a nuisance claim against their neighbors. (ECF No. 1, PageID.14-16.) The court declined to exercise supplemental jurisdiction. (ECF No. 17.) If Plaintiffs chose to do so, they may pursue claims against their neighbors in state court. The court expresses no opinion as to the substance of any lawsuit against their neighbors.

independent decisions of Plaintiffs' neighbors, Plaintiffs fail to state a claim under both substantial due process and equal protection.

Substantive due process offers Plaintiffs only limited protection against state action. It does not "offer recourse for every wrongful action taken by the government." *Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019). Instead, courts have found a small set of rights so "deeply rooted in this Nation's history and tradition" or "implicit in the concept of ordered liberty" that no government can place limitations on them, "regardless of the adequacy of the procedures employed." *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007). Courts are cautious to apply and extend this doctrine because, by doing so, they "place the matter outside the arena of public debate and legislative action." *Bell v. Ohio State Univ.*, 351 F.3d 240, 250 (6th Cir. 2003).

"Government conduct violates substantive due process rights only if it deprives an individual of a particular constitutional guarantee, or otherwise 'shocks the conscience.'" *In re City of Detroit*, 841 F.3d 684, 699 (6th Cir. 2016). "[I]n the context of zoning regulations," a plaintiff must show that "(1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action."[4] *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). This standard is exceptionally difficult for a plaintiff to meet and is tied to the "shocks the conscience" category of recognized harms. *In re City of Detroit*, 841 F.3d at 699. "'[S]hocks the conscience' terminology [is] . . . relevant in the

---

[4]     Plaintiffs spend considerable energy arguing they had a property interest in a view of Lake St. Clair. (ECF No. 15, PageID.209-12.) The substantive due process claim fails for different reasons, and the court will assume, without deciding, that Plaintiffs possessed a valid property interest.

zoning context to emphasize the degree of arbitrariness required to set aside a zoning decision by a local authority." *EJS Props., LLC*, 698 F.3d at 855; *accord Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) ("[Substantive due process] also protects the right to be free from 'arbitrary and capricious' governmental actions, which is another formulation of the right to be free from conscience-shocking actions.").

"Conduct shocks the conscience if it violates the decencies of civilized conduct" or "includes actions so brutal and offensive that they do not comport with traditional ideas of fair play and decency." *Range*, 763 F.3d at 589 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998)). To violate substantive due process, a local government's zoning decision must express "extreme irrationality." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1222 (6th Cir. 1992). "A court should not interfere with local zoning decisions unless the locality's decision . . . [has] no rational relation to any public purpose." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 574 (6th Cir. 2008) (quotations removed).

Accepting the allegations in Plaintiffs' complaint as true and drawing all reasonable inferences in Plaintiffs' favor, *Ashcroft*, 556 U.S. at 678, Plaintiffs have not alleged a recognizable substantive due process claim. The complaint explains that Plaintiffs' neighbors submitted a site plan to the ZBA in order to obtain a height variance. (ECF No. 1, PageID.4.) After the ZBA approved the height variance, the neighbors then submitted a revised site plan to Defendants in order to obtain the remaining building permits. (*Id.*, PageID.6.) Although the revised site plan situated the footprint of the house some twenty to forty feet closer to the breakwall of Lake St. Clair, Defendants issued all the necessary building permits without sending the revised site

plan back to the ZBA. (*Id.*) The complaint reasonably implies that even before

requesting the height variance from the ZBA, the neighbors already planned to build

closer to the lake but withheld that plan when the height variance request was before

the ZBA. (*Id.*)

However, the complaint also states that the neighbors' new building was still over

100 feet back from the shore, which, by itself, is consistent with local zoning codes. *See*

St. Clair Shores, Mich., Ordinances art. XVIII, § 15.481 (2019). (ECF No. 1, PageID.4,

6; ECF No. 1-5, PageID.30.) Thus, the only alleged deficiency in the revised site plan

was that the structure was located closer to the lake than originally planned, and not

even with the existing setback of Plaintiffs' residence. But Plaintiffs cite no law requiring

lakefront homes in St. Clair Shores to be evenly aligned. They also fail to cite any law

requiring their neighbors to obtain separate approval from the ZBA to resituate their

structure closer to the water.

Allowing the construction of a neighboring house closer to the lake, and thus

obstructing Plaintiffs' views, does not fairly approach governmental conduct that "shocks

the conscience" under constitutional standards. *In re City of Detroit*, 841 F.3d at 699. A

beautiful view of the sunrise may be impressive, and may well enhance the property's

value, but losing that view to a newly constructed living room does not strike at the heart

of this country's conscience. Plaintiffs may have a justifiable feeling of being

flimflammed in the process—first they see a proposed site plan with an aligned and

unobjectionable eastern set-back, and a seeming moment later they find the bulldozers

excavating forty feet further east. But this feeling, while certainly understandable, does

not give rise to a constitutional claim against Defendant City of St. Clair Shores or its employee, Defendant Chris Rayes.

Defendants' actions simply cannot be said to exhibit "extreme irrationality," *Pearson*, 961 F.2d at 1222, nor do they "violate[] the decencies of civilized conduct." *Range*, 763 F.3d at 589; *see also Hussein v. City of Perrysburg*, 617 F.3d 828 (6th Cir. 2010) (holding that a zoning decision preventing a couple from completing an asphalt driveway to access their home "does not shock the conscience"); *EJS Props., LLC*, 698 F.3d at 862 (finding that a local official's demand for bribes in exchange for a favorable zoning decision was not "so shocking as to shake the foundations of this country"). Dismissal of Plaintiffs' substantive due process claim is warranted.

## C. Equal Protection

Likewise, even if Plaintiffs had standing to sue Defendants for violation of the Equal Protection Clause of the Constitution. U.S. Const. amend. XIV, § 1, such a claim would fail on the merits. Plaintiffs do not argue this case implicates suspect classifications, such as gender or race, or fundamental rights. "[R]ational-basis review is appropriate [where] . . . there are no suspect classifications or fundamental rights at issue." *EJS Props., LLC*, 698 F.3d at 864.

Instead, Plaintiffs are homeowners who lost a portion of their previously unobstructed views of the lake. Their claim thus falls under a "class of one" theory. Plaintiffs can bring a successful equal protection claim as a class of one where they are "treated . . . differently from others similarly situated and that there is no rational basis for such difference in treatment." *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). This claim, like

11

substantive due process, is narrow and applied cautiously. "Class-of-one claims are generally viewed skeptically because such claims have the potential to turn into an exercise in which [finders-of-fact] are second-guessing the legislative process." *Loesel v. City of Frakenmuth*, 692 F.3d 452, 461-62 (6th Cir. 2012). Courts avoid acting as "general-purpose second-guessers of the reasonableness of broad areas of state and local decisionmaking." *Id.* at 462. "It is always possible for persons aggrieved by government action to allege, and almost always possible to produce evidence, that they were treated differently from others, with regard to everything from zoning to licensing to speeding to tax evaluation." *Id.* Court intervention in local zoning disputes is rare and reserved for the clearest cases of government abuse.

A class of one claim has two elements. First, Plaintiffs must allege facts to show that "the government treated similarly situated persons differently." *Superior Commc'ns v. City of Riverview*, 881 F.3d 432, 446 (6th Cir. 2018). To that end, Plaintiffs "must allege that [they] and other individuals who were treated differently were similarly situated in all material respects." *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 987 (6th Cir. 2012). Second, Plaintiffs must show that Plaintiffs' treatment of similarly situated individuals fails rational basis review. *Warren*, 411 F.3d at 710 (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000)). Plaintiffs fail to allege facts sufficient to meet either element.

As to the first element, the complaint includes conclusory assertions that "Plaintiffs were similarly situated to other waterfront property owners" and Defendants had a "policy or custom of keeping the homes of waterfront property owners in line." (ECF No. 1, PageID.10.) However, Plaintiffs do not allege explicitly or through

12

reasonable implication that other homeowners have gone through the zoning process which forms the basis of Plaintiffs' complaint, and that during that process Defendants treated other homeowners differently than they did Plaintiffs' neighbors. Nor do they allege that, through such unequal action, Defendants treated Plaintiffs differently as well. *Ashcroft*, 556 U.S. at 678. Stated differently, the complaint does not allege that Defendants protected Plaintiffs' views differently than they protected the views of other property owners.

Nowhere in the complaint, for example, do Plaintiffs assert that another property owner has attempted to build a house in a way that blocked a neighbors' previously unobstructed view, and that in reaction Defendants halted the proposed construction to "line 'em up." Further, the complaint does not allege that other owners have obtained variances from the ZBA for unrelated reasons but were prevented from building closer to the lake because the owners' construction site plans had changed. Plaintiffs do not even allege that all or most homes fronting the water in St. Clair Shores were, in fact, in line. Plaintiffs allege, without explanation or detail, that a "policy or custom" existed to keep homes in line, but the complaint does not provide any details of the alleged policy or custom and it further does not allege that houses were actually in line.[5] *See*

---

[5]     In fact, the site plans attached to Plaintiffs' complaint show preexisting homes in St. Clair Shores were *not* in line with Plaintiffs' home. (ECF Nos. 1-2, 1-5.) Plaintiffs also attached a photograph that shows another house substantially closer to Lake St. Clair than Plaintiffs' neighbors' house. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (holding that courts may consider "exhibits attached to the complaint" when reviewing motions to dismiss under Rule 12(b)(6)). (ECF No. 1-4, PageID.28.) Similarly, Defendants proffered at oral argument that overhead photographs would show that houses were not in line. No such photos were presented as evidence, nor could they be, at the Rule 12 hearing. At this stage in the proceedings, the court is focused on the allegations in Plaintiffs' complaint.

*Twombly*, 550 U.S. at 545 (requiring that complaints include "more than labels and conclusions"). (ECF No. 1, PageID.10.)

Plaintiffs' claim is further hindered by the zoning ordinances of St. Clair Shores, which permit a house to be sited as close as thirty-five feet from the lake. *See* St. Clair Shores, Mich., Ordinances art. XVIII, § 15.481 (2019). If the zoning ordinances specifically allow houses as close as thirty-five feet, yet Plaintiffs' structure is situated over 100 feet from the lake, then presumably the zoning ordinances do not require all houses to be in line with the location of Plaintiffs' house. The court is made aware of no local, state, or federal law specifically preventing property owners from constructing homes blocking others' lake views. Nor do Plaintiffs cite legal authority holding that the neighbors were required to obtain permission from the ZBA to build their house closer to the water, even after obtaining a height variance using a different site plan.

A showing of similar circumstances is vital to an equal protection claim because it allows the court to determine if Defendants "ha[d] a rational reason for [acting] differently due to [those] [circumstances]." *EJS Props., LLC*, 698 F.3d at 865-66. Even under the pleading requirements set forth in *Ashcroft*, 556 U.S. at 678, Plaintiffs provide the court no set of facts, alleged or implied, which would permit the court to analyze or conclude whether Defendants acted rationally in treating potentially similar homeowners differently. Considering it was legal under the local ordinance for the neighbors to site their home even closer to the lake than they eventually did, and without allegations as to whether other homeowners previously sought approval to build a closer home or, if so, whether such requests were denied by Defendants, Plaintiffs have failed to allege the existence of similarly situated individuals. *Compare Bench Billboard Co.*, 675 F.3d at

987 (finding that company building benches with advertisements near bus stations was not similarly situated to company that paid for advertisements on other entities' bus shelters), *and Superior Commc'ns*, 881 F.3d at 447 (holding that telecommunications companies were not similarly situated when there was no indication the companies were both limited contractually from building larger broadcast equipment), *with Loesel*, 692 F.3d at 463-64 (finding that 65,000 square foot Walmart store, which was denied zoning approval, similarly situated to 104,000 square foot local mall, "two small parcels of land" away, which was granted zoning approval). Simply alleging as a conclusion, without factual detail or legal support, that there existed a "policy" to keep houses in line and Defendants treated Plaintiffs' neighbors differently, (ECF No. 1, PageID.10-11), does not raise a reasonable inference that other homeowners were placed in materially similar circumstances. *Superior Commc'ns*, 881 F.3d at 446; *Ashcroft*, 556 U.S. at 678. (ECF No. 1, PageID.10.)

Even if Plaintiffs met the first element of a class of one claim, they failed to satisfy the second element. Plaintiffs must allege facts to show that Plaintiffs' treatment of similarly situated individuals fails rational basis review. "[C]ourts will not overturn government action unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." *Warren*, 411 F.3d at 710 (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000)). "If there is any reasonably conceivable state of facts that could provide a rational basis for the [state actor's] conduct, then the [state actor] has not violated the constitution." *Systemic Recycling LLC v. City of Detroit*, 635 F. App'x 175, 181 (6th Cir. 2015) (quoting *FCC v.*

*Beach Commcn'ns, Inc.*, 508 U.S. 307, 313 (1993)). The government action may be

supported by "rational speculation" without "evidence or empirical data." *TriHealth, Inc.*

*v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 790 (6th Cir. 2005) (quotations

removed). In a class of one suit, Plaintiffs can demonstrate Defendants' actions lack a

rational basis by either "negativing every conceivable basis which might support the

government action or by demonstrating that the challenged government action was

motivated by animus or ill-will." *Johnson v. Morales*, 946 F.3d 911, 939 (6th Cir. 2020)

(quotations removed).

Even accepting Plaintiffs' allegations as true and drawing reasonable inferences

in their favor, *Ashcroft*, 556 U.S. at 678, Defendants' actions permitting Plaintiffs'

neighbors to build closer to Lake St. Clair passes the rational basis test as a matter of

law. Building a home closer to the water and blocking other homeowners' views, in and

of itself, does not violate local ordinances or any other cited law. Plaintiffs present no

legal authority requiring their neighbors to seek approval from the ZBA or Defendants

before building closer to the lake.[6] Permitting Plaintiffs' neighbors to initiate lawful

construction on their own property falls well within the expansive range of legitimate and

rational government discretion. *See Warren*, 411 F.3d at 710.

In fact, if Defendants had prevented the neighbors from building out-of-alignment

closer to the lake when such construction would comply with local zoning codes, that

decision itself could potentially fail rational basis review and subject Defendants to

---

[6]     Counsel for Defendants at oral argument proffered that the City cares minimally
about whether anyone's existing view along the lake is obstructed or where within the
property boundaries a house is situated, as long as it is at least thirty-five feet back from
the seawall. Such assertions are not evidence, of course, nor would evidence be
permitted at the Rule 12 stage.

liability. The court will not place Defendants in a legal whipsaw: subjecting local government to liability either way they come down on a discretionary issue. That is not the design of the equal protection clause. Courts are to refrain from acting as "general-purpose second-guessers of the reasonableness of broad areas of state and local decisionmaking." *Loesel*, 692 F.3d at 462.

A reasonable inference from Plaintiffs' complaint is that their neighbors misrepresented their intentions to the ZBA when they submitted the original site plan, which placed the neighbors house in line with Plaintiffs' house. *Ashcroft*, 556 U.S. at 678. (ECF No. 1, PageID.6, Complaint ("[Plaintiffs' neighbors], apparently believing they are free to lie to the ZBA to obtain variances, proceeded to construct their home in a manner wildly out of line with Plaintiffs' home.").) But this alleged misrepresentation was made by Plaintiffs' neighbors, not Defendants. Furthermore, Plaintiffs' neighbors sought ZBA approval for a height variance, not to approve anything about the relationship of the house to the lake. Plaintiffs do not contest that building closer to the lake does not in itself violate zoning rules.[7]

---

[7]    Plaintiffs admit zoning rules do not bar the construction closer to the lake and instead argue that Defendant Rayes mandated, at the ZBA hearing, that the neighbors' house be in line with Plaintiffs'. (ECF No. 15, PageID.202-03.) The complaint states otherwise. Defendant Reyes allegedly told the ZBA that "the [c]ity look[s] at existing structures . . . to *try* [to] keep everyone in line." (ECF No. 1, PageID.5 (emphasis added).) More significantly, Plaintiffs cite no legal authority supporting the conclusion that what a local official says at a board meaning becomes the rule of law for the city or regulated parties. Law must be codified to be applied consistently across diverse factual circumstances. It is not created by cursory statements of a local zoning officer at one meeting. The court notes, parenthetically, that the absence of a uniform, enforced requirement to maintain, at least roughly, an aligned arrangement of the lakeward building façades so as to avoid visual encroachment is, to this court's mind, more than just regrettable. In fact, it seems to be the precipitating municipal failure at work in this dispute. Not that the task of crafting such a setback requirement would prove difficult . . . it has been done by at least one other Michigan waterfront municipality that specifically

17

Plaintiffs allege the neighbors' application for a variance included a provision stating that "[f]ailure to provide accurate and complete information or to make false statements may cause the [ZBA] to rescind its decisions until the [ZBA] is satisfied." (ECF No. 1, PageID.4.) In its own words, the ZBA zoning decision *may* be revoked if false information was provided. The ZBA is not *required* to revoke variances when applications include false information, especially when that information was not related to the variance sought. Further, even if the variance were revoked, there exist no reasonable inferences that the ZBA or Defendants could have justifiably or legally prevented the decision to build closer to lake and obstruct Plaintiffs' views. *Ashcroft*, 556 U.S. at 678. The choice of where to build the home was the owners', and it appears to have been made within the confines of existing zoning laws. Allowing the neighbors to exercise their property rights was not so outside the bounds of reasonable behavior that "the court can only conclude that [Defendants'] actions were irrational." *Warren*, 411 F.3d at 710. Plaintiffs fail to plausibly allege that no "conceivable basis . . . might support [Defendants'] action[s]" or that the neighbors' choice in construction was the result of "animus or ill-will" on the part of the local government. *Johnson*, 946 F.3d at 939; *Ashcroft*, 556 U.S. at 678. Dismissal of Plaintiffs' equal protection claim is warranted.

---

avoids such lakeward view appropriation. *See* Port Huron, Mich., Municipal Code ch. 52, div. 16, § 52-621 (2017) ("Any new construction on a parcel adjacent to the lake, canal, or rivers, as it relates to the yard along the waterfront, shall conform to the average setback established by the existing adjacent dwellings on either side of the proposed construction."). This municipal failure, however, cannot be corrected at the judicial level, but must be pursued legislatively, whether through lobbying or at the ballot box.

### D.  Qualified Immunity

Defendant Reyes also asserts a qualified immunity defense. (ECF No. 13, PageID.108.) To "shield officials from harassment, distraction, and liability when they perform their duties reasonably," courts have devised a two-part test to protect government officials from civil litigation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Courts consider: "(1) whether the alleged facts . . . show that the official's conduct violated a constitutional right, and (2) whether that constitutional right was clearly established." *Rieves v. Town of Smyrna,* 959 F.3d 678, 695 (6th Cir. 2020).

As described above, Defendants did not violate Plaintiffs' constitutional rights as a matter of law. Thus, Defendant Reyes is entitled to qualified immunity under the first step of the analysis. *See Id.* Even if Defendant Reyes' actions were constitutionally suspect, the constitutional right to be free from a neighbor's construction that blocks lake views was not "clearly established." *Id.*

"A right is clearly established when a reasonable officer would know—in the given situation and with the information known to him at the time—that his conduct violated that right." *Id.* Stated another way, "[i]f reasonable officials could disagree as to whether the conduct at issue was lawful, then qualified immunity applies." *Id.* "The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *District of Colombia v. Wesby*, 138 S.Ct. 577, 590 (2018). "[C]ourts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). "'[A] body of relevant case law' is

usually necessary to 'clearly establish' the [legal] answer." *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

"[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020) (quotations removed). This is in part because of "the fact-intensive nature of [qualified-immunity] tests." *Wesley v. Campbell*, 779 F.3d 421, 434 (2015). However, "qualified immunity is a threshold question to be resolved at the earliest possible point." *Id.* at 433 (quoting *Vakilian v. Shaw*, 335 F.3d 509, 516 (2003)). "[S]ometimes [qualified immunity] [is] best resolved in a motion to dismiss." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 762 (6th Cir. 2020); *accord Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016) ("[D]ismissal . . . is appropriate when the defendant is entitled to a meritorious affirmative defense such as qualified immunity."); *see also Johnson v. Moseley*, 790 F.3d 649, 657 (6th Cir. 2015) (reversing a district court's denial of qualified immunity at the pleading stage). "If, taking all the facts as true and reading all inferences in the plaintiff's favor, the plaintiff has not plausibly show[n] a violation of his clearly established rights, then the officer-defendant is entitled to immunity from suit." *Siefert*, 951 F.3d at 762.

This is a case where qualified immunity is justified on a Rule 12(b)(6) motion. Plaintiffs do not allege that their local zoning official violated their constitutional rights by forcing Plaintiffs to use their land in a certain way. *See, e.g., Shoemaker v. City of Howell*, 795 F.3d 553, 557-58 (6th Cir. 2015) (property owner alleging constitutional violations for local ordinance requiring that the individual maintain a piece of property adjacent to his land). Nor do Plaintiffs allege Defendant Reyes has prevented them from

making use of their land. *See, e.g.*, *Richardson v. Twp. of Brady*, 218 F.3d 508, 512 (6th Cir. 2000) (constitutional claims against a local government for zoning rules preventing the plaintiff from operating a pig farm on his property). Plaintiffs do not claim that Defendant Reyes or Defendant St. Clair Shores themselves sited a government structure to block Plaintiffs' lake views. Instead, Plaintiffs claim Defendant Reyes violated the constitution by allowing private parties, who are not before this court, to build a structure in a way that harmed Plaintiffs' property value. Plaintiffs fail to cite a case where a local government has been held liable under substantive due process or equal protection by allowing private actors to use property in a way that allegedly harmed neighboring property values, particularly where no violation of a zoning ordinance has been cited or identified.

The extent and nature of zoning regulation is discretionary and should, if possible, be left to the democratic process and local government policymaking. Separate bodies of law, such as the state law of nuisance, are created for the explicit purpose of preventing property owners from imposing unreasonable burdens on their neighbors. *See, e.g., Adkins v. Thomas Solvent Co.*, 440 Mich. 293, 487 N.W.2d 715, 719 (1992) ("A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land . . . It evolved as a doctrine to resolve conflicts between neighboring land uses."); *see also* Mich. Comp. Laws § 125.3605 (a provision of the Michigan Zoning Enabling Act permitting "[a] party aggrieved by [a zoning] decision [to] appeal to the circuit court for the county in which the property is located."). Allowing Plaintiffs to recover in this case risks constitutionalizing, and federalizing, a

large class of local property disputes. *See Bell*, 351 F.3d at 250; *Loesel*, 692 F.3d at 461-62.

Assuming the allegations in the complaint are true, *Ashcroft*, 556 U.S. at 678, a reasonable official presented with these "particular circumstances" could believe that allowing Plaintiffs' neighbors' construction did not violate Plaintiffs' constitutional rights. *Wesby*, 138 S.Ct. at 590; *Rieves,* 959 F.3d at 695. The substantive due process and equal protection rights Plaintiffs advance were not "clearly established," and Defendant Reyes is entitled to qualified immunity. *Rieves,* 959 F.3d at 695.

### IV. CONCLUSION

The decision of Plaintiffs' neighbors to build a house closer to the lake, thereby interfering with Plaintiffs' views, is not an action traceable to the government. Even if it were, Defendants' actions to allow the obstruction of Plaintiffs' views does not shock the conscience and does not fall outside the bounds of conceivably rational behavior. Finally, no constitutional right was clearly established, and Defendant Reyes is entitled to qualified immunity. Plaintiffs' constitutional claims will be dismissed. As those are the only remaining claims in this lawsuit, the entire case will be dismissed. Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss (ECF No. 13) is GRANTED. Plaintiffs' complaint is DISMISSED in its entirety.

s/Robert H. Cleland                              /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  January 27, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 27, 2021, by electronic and/or ordinary mail.

s/Lisa Wagner                                    /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-12046.SHREEVE.MotiontoDismiss.RMK.final.docx